(Decided 23rd June, 1885.)

---

THOMAS F. GAREY *vs.* JOHN T. SANGSTON, and CHARLES H. WHITBY, Adm'r of EDGAR PLUMMER.

*Scire facias—Amendment—Evidence—Assignment of judgment—Prayers and instructions to the Jury—Practice in the Appellate Court.*

A judgment for $1275.50 was recovered in April, 1869, by J. H. T. against T. F. G. On the 10th of April, 1869, J. H. T. and his attorney executed a written assignment of the judgment to his brother C. E. T., and directed the clerk to enter it for his use, which was accordingly done. C. E. T. died in 1872, and a *scire facias* to revive the judgment was issued by his administrator on the 9th of

Garey *vs.* Sangston and Whitby.

September, 1880. On the 8th of October, 1883, a motion was filed by S. in the nature of a petition to the Court, alleging in substance that the original assignment of the judgment to C. E. T. was made to him in trust, to pay, in the first instance and primarily, the sum of $75 to himself, and a judgment of $416.29 which the F. & M. Bank of Kent County held against J. H. T., and then to apply the residue to the payment in full or ratably, of a judgment for $185.70 which S. held against J. H. T. and another, and a judgment for $464.85 which the same Bank had recovered against J. H. T. and E. P., and which the latter had paid and taken an assignment of to his use. The petition further alleged notice to the defendant of the assignment to C. E. T. and the trust, and prayed that the *scire facias* might be amended in its titling so as to correspond to said use, or in other words, that it might be endorsed for the use of the administrator of C. E. T. to the extent of $75, and then for the payment of the Bank judgment of $416.29, and as to the residue to the use of S. and P. proportionately. HELD :

That the Court had the power, upon proper cause shown, to amend the titling to the writ so that the rights of the real parties in interest should be made to appear upon the record by an appropriate entry to their use.

The defendant G. paid part of the judgment, and he made the defence that he had become legally discharged from the residue by a valid compromise in the nature of an accord and satisfaction with C. E. T. or his administrator, before he *had notice* that S. and P. claimed any interest therein. At the trial the plaintiffs offered in evidence the papers and records in an attachment case, which showed that S. on the 17th of December, 1869, issued an attachment on his judgment of $185.70, against J. H. T. and another, and that this attachment was laid in the hands of G. as garnishee, who on the 7th of October, came in and set up the defence that the only credit in his hands "subject to attachment is a judgment of J. H. T." against him "which has been set over, assigned and transferred to the use of C. E. T.," and he prays "that said C. E. T. may be notified to come in and defend the case." On objection, it was HELD :

That these papers were admissible as containing evidence tending to show an admission by the defendant, made as late as October, 1870, that he had not then been discharged from liability on account of this judgment, and that he did not then claim that he had been so discharged.

The defendant offered in evidence a letter dated August 21st, 1869, purporting to have been written by J. H. T. to his brother C. E. T.

in which the writer said in substance, "G. is here, and I have agreed, if he will pay the Kent County Bank claim, and pay you $75, that you can mark the judgment satisfied. I do this for the purpose of having you relieved of any trouble on my account. I hope this will be satisfactory to you and we will quit square." HELD:

1st. That the letter had no bearing upon the questions at issue, because there was nothing in it, tending to show that G. did not *have notice* of the claim of S. and P. to an interest in the judgment at the time they insisted he had, or that the assignment to C. E. T. was not made upon the trusts they set up.

2nd. That if such was the character of that assignment, and if G. had notice of it immediately after it was made, neither J. H. T., nor C. E. T., nor G., himself, nor all of them together, could by any arrangement or agreement subsequently made by any two, or all of them deprive S. and P. of their rights under it.

3rd. That as the letter threw no light upon either of those questions, it was properly excluded from the consideration of the jury.

4th. That it was not necessary that C. E. T., or his administrator should, in writing, have assigned or transferred any portion of the judgment, or directed the same to be set over to the use of S. and P. If the original assignment to C. E. T. was upon the trusts claimed by S. and P., it protected their rights in the judgment as soon as G. had notice thereof.

This Court will not reverse a judgment on account of the granting of inconsistent instructions, unless the character of the instructions were such as to afford good reason for supposing they might have had the effect of misleading or confusing the minds of the jury.

APPEAL from the Circuit Court for Caroline County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, RITCHIE, and BRYAN, J.

*Howard Bryant,* and *J. W. Bryant,* for the appellant.

*Marshall S. Mutchler,* for the appellees.

MILLER, J., delivered the opinion of the Court.

In this case a *scire facias* was issued to revive a judgment for $1275.50, which was recovered in April, 1869, by J. Hopkins Tarr against Thomas F. Garey the appellant.

The record shows that on the 10th of April, 1869, J. Hopkins Tarr and his attorney executed a written assignment of the judgment to his brother Charles E. Tarr, and directed the clerk to enter it for his use, which was accordingly done.    Charles E. Tarr died in 1872, and this *scire facias* was issued by his administrators on the 9th of September, 1880.    Among the defences which the defendant, Garey, pleaded to this writ, one was that a *·fi. fa.* had been issued on the judgment, upon which there was an outstanding *vendi.* at the time the *sci. fa.* was issued, but this defence has been abandoned in this Court, and we are not troubled with any questions which arose in the Court below under this plea.    He also pleaded *nul tiel record,* which the Court decided against him.    No exception was taken to this decision, and nothing relating to this defence is before us for review.

Very little appears to have been done in the case until the 6th of October, 1883, when, Sangston, one of the appellees, filed a motion in the shape of a petition to the Court, alleging in substance, that the original assignment of the judgment to Charles E. Tarr, was made to him in trust to pay in the first instance, and primarily, the sum of $75 to himself, and a judgment of $416.29 which the Farmers' and Mechanics' Bank of Kent County held against J. Hopkins Tarr, and then to apply the residue to the payment in full, or ratably, of a judgment for $185.70, which Sangston held against J. Hopkins Tarr, and another, and a judgment for $464.85, which the same Bank had recovered against J. Hopkins Tarr and Edgar Plummer, and which the latter had paid and taken an assignment of to his use.    The petition further alleges that shortly after the entry of the use to Charles E. Tarr, and while

a *fi. fa.* on the judgment was in the hands of the sheriff, the nature of the assignment to Charles E. Tarr, and the trust was made known to Garey, the defendant in the judgment. The petition then prays that the *scire facias* may be amended in its titling so as to correspond with the use aforesaid, or in other words, that it may be endorsed for the use of the administrators of Charles E. Tarr to the extent of $75, and then for the payment of the Bank judgment of $416.29, and as to the residue to the use of Sangston and Plummer proportionately. The Court granted the motion, and the titling to the writ was amended according to the prayer of this petition.

Much has been said in argument by the appellant's counsel against this action of the Court. They have contended that the Court could not in this action at law amend the original written assignment, or interfere with it in this way. We have no doubt, however, as to the power of the Court, upon proper cause shown, to amend the titling to the writ so that the rights of the real parties in interest should be made to appear upon the record, by an appropriate entry to their use. But no possible harm could result to the defendant by this entry being made unless he was thereby deprived of some defence which he could otherwise have made to the revival of the judgment, and it is clear he was not so deprived, or prevented from making any such defence. If he had paid the judgment in full to the original assignee before this entry was made, that defence was still open to him. Again, if he had become legally discharged from the judgment by any valid compromise with such assignee before he *had notice* that Sangston and Plummer had or claimed to have an interest in it, he could make that defence, as he in fact did, notwithstanding this entry.

It is conceded that the appellant actually paid on this judgment only the sum of $75 to Charles E. Tarr, and the Bank judgment of $416.29, and the full benefit of these

payments was given him by the verdict of the jury. The only other defence he could possibly make, was that he had become legally discharged from the residue of the judgment by a valid compromise in the nature of an accord and satisfaction, with Charles E. Tarr, or his administrators, before he *had notice* that the appellees claimed any interest therein. This defence he made, and it was the only meritorious and substantial one he had. The pleadings as they appear in the record, are in a state of some confusion, but they nevertheless clearly show that this defence was fairly presented to the jury. Most of the testimony was directed to this point, and in view of what we have already said, our duty is confined to the determination of the question whether any fatal error was committed by the Court upon the trial of *this issue.*

Eleven exceptions were taken to rulings upon the admissibility of evidence, only two of which, the eighth and eleventh require notice. In the eighth exception the plaintiffs offered in evidence the papers and records in an attachment case, which showed that Sangston on the 17th of December, 1869, issued an attachment on his judgment of $185.70, against J. Hopkins Tarr and another, and that this attachment was laid in the hands of Garey as garnishee, who on the 7th of October, 1870, came in and set up the defence that the only credit in his hands "subject to attachment is the judgment of J. Hopkins Tarr," against him, "which has been set over, assigned and transferred to the use of Charles E. Tarr," and he prayed "that said Charles E. Tarr may be notified to come in and defend the case." The Court against the objection of the defendant permitted these papers and records to go to the jury as evidence, and in this we discover no error. They were admissible as containing evidence tending to show an admission by the defendant, made as late as October, 1870, that he had not then been discharged from liability on account of this judgment, and that he did not then claim

that he had been so discharged. In the eleventh exception the defendant offered in evidence a letter, dated August 21st, 1869, purportiong to have been written by J. Hopkins Tarr, to his brother Charles E. Tarr, in which the writer says in substance : "Garey is here, and I have agreed if he will pay the Kent County Bank claim and pay you $75, that you can mark the judgment satisfied. I do this for the purpose of having you relieved of any trouble on my account. I hope this will be satisfactory to you, and we will quit square." The plaintiffs objected to the admission of this letter and the Court sustained the objection "unless said letter could be traced to Charles E. Tarr." If Charles E. Tarr never received the letter, and if there was no proof to show that he ever did, of course it could not be offered in evidence. But besides this the letter seems to have no bearing whatever upon the questions at issue. There is nothing in it tending to show that Garey did not *have notice* of the appellees' claim to an interest in the judgment at the time they insist he had, or that the assignment to Charles E. Tarr was not made upon the trusts they set up. These were the questions upon which the jury were to pass. If such was the character of that assignment, and if Garey, had notice of it immediately after it was made, neither J. Hopkins Tarr, nor Charles E. Tarr, nor Garey himself, or all of them together, could by any arrangement or agreement subsequently made by any two or all of them, deprive the appellees of their rights under it. This letter throws no light upon either of these questions and we think it was properly excluded from the consideration of the jury.

The rulings upon the prayers remain to be disposed of. The Court granted two instructions upon this question, one at the instance of the plaintiffs and the other at the instance of the defendant. The former is in effect that if the jury find from the evidence that J. Hopkins Tarr made the alleged assignment of the judgment in question, to

Charles E. Tarr, and that it was made upon the trust set up by the plaintiffs, (all of which are set out in the instruction) and that Garey has paid the Bank's claim of $416.29 and the $75 to Charles. E. Tarr, and has never paid any other part of the judgment, and that the residue has never been paid, then they shall find a verdict for the plaintiffs for the amount of such residue. The latter is to the effect that if the jury find from the evidence that Garey paid the Bank claim and the $75 to Charles E. Tarr, and that said Charles E. Tarr should be relieved from further litigation, (which the record shows had been begun by Garey in reference to this judgment) and that said Charles E. Tarr accepted the same as a full satisfaction of the original judgment, and executed an order to the sheriff to satisfy the same, then such payment and acceptance is an accord and satisfaction, and they must find for the defendant, unless they further find that Garey at the time of said agreement had knowledge that Charles E. Tarr held the said judgment for the use in part of Sangston and Plummer.

By these instructions taken together, the jury were plainly told that if they found the facts stated in the first, they must give a verdict for the plaintiffs, *unless* they found the additional facts stated in the second, and if they do find such additional facts, then they must render a verdict for the defendant. It is true the Court granted both these instructions, without, so far as the record shows, saying to the jury in express terms that they were to take them in connection one with the other, or that the latter was to be taken as a qualification or modification of the former, but it is so obvious that such was its effect that it is impossible to conceive that a jury of ordinary intelligence could have been in any way misled or confused as to their verdict. Cases no doubt may be found in which this Court has reversed judgments on account of the granting of inconsistent instructions, but an examination of them will

show that the instructions were such as to afford good reason for supposing they may have had the effect of mis-leading or confusing the minds of the jury ; but in a plain case like this where there is no reasonable ground for such a supposition, it would be trifling with trial by jury and with justice itself, to reverse the judgment and deprive the plaintiffs of the benefit of the verdict. We are, therefore, of opinion there is no fatal error in this ruling.

Only one question arising upon the pleadings need be noticed. The defendant's third amended plea sets up as a defence to the action, the fact that neither Charles E. Tarr, nor his administrators, ever at any time in writing assigned or transferred any portion of this judgment, or directed the same to be set over, or entered to the use of Sangston or Plummer. The Court rightly, as we think, sustained the plaintiff's demurrer to this plea. It was not necessary there should have been such an assignment in writing, or such direction given. If the original assignment to Charles E. Tarr was upon the trusts claimed by the appellees, it protected their rights in the judgment as soon as Garey had notice thereof.

*Judgment affirmed.*

(Decided 23rd June, 1885.)